## CASE NO. 23-3235

---

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

BRIAN CALVERT, et al,
individually and on behalf of all others similarly situated,
*Plaintiffs / Appellants*

v.

BPS DIRECT LLC, et al,
*Defendants / Appellees.*

---

*On Appeal from an Order Entered in the United States District Court for
the Eastern District of Pennsylvania in Case No. 2:23-md-03074
The Honorable J. Mark Kearney, U.S. District Judge*

---

## REPLY BRIEF OF APPELLANTS

---

**LYNCH CARPENTER, LLP**
Gary F. Lynch
Jamisen A. Etzel
Nicholas A. Colella
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
412-322-9243

*Counsel for Appellants*

*(Additional counsel listed on signature page)*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION.......................................................................................1

ARGUMENT ..........................................................................................4

A.   The kind of harm at issue here is the same as in this Court's
binding *Google* and *Nickelodeon* decisions.........................................4

B.   Website Users Cornell and Montecalvo would satisfy a more
stringent requirement for Article III standing, so even under the
district court's flawed reasoning they should not have been
dismissed. ........................................................................................15

CONCLUSION ........................................................................................19

# TABLE OF AUTHORITIES

<u>**Cases**</u> <u>**Page(s)**</u>

*Barclift v. Keystone Credit Services, LLC*,
   93 F.4th 136 (3d Cir. 2024) ................................................................ 13, 14

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ................................................................. 11

*Hassan v. City of New York*,
   804 F.3d 277 (3d Cir. 2015) ................................................................... 8

*In re Google Inc. Cookie Placement Cons. Priv. Litig.*,
   806 F.3d 125 (3d Cir. 2015) ................................................................ 9, 10

*In re Google Inc. Cookie Placement Cons. Priv. Litig.*,
   934 F.3d 316 (3d Cir. 2019) ........................................................... passim

*In re Google Referrer Header Priv. Litig.*,
   465 F. Supp. 3d 999 (N.D. Cal. 2020) .................................................. 12

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016) ........................................................... passim

*Mount v. PulsePoint, Inc.*,
   684 F. App'x 32 (2d Cir. 2017) ............................................................. 12

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .................................................................... 2, 6, 19

*Susinno v. Work Out World Inc.*,
   862 F.3d 346 (3d Cir. 2017) ................................................................. 19

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ........................................................................ 2, 17

*Watters v. Bd. of Sch. Directors of City of Scranton*,
   975 F.3d 406 (3d Cir. 2020) ................................................................. 17

## **Statutes**

18 Pa. Cons. Stat. § 5701 ................................................................5

18 U.S.C. § 1030 ...............................................................................5

18 U.S.C. § 2510 ...............................................................................5

Mass. Gen. Laws ch. 272 § 99(Q) ................................................5

Md. Code. Ann., Cts. & Jud. Proc. § 10-401 ...........................5

Mo. Ann. Stat. § 542.400 ..............................................................5

## **INTRODUCTION**

Privacy interests in oral and written communications have *always* been protected under American law. With the development of electronic forms of communication, Congress and almost every state legislature passed laws that extended the common law's protection of privacy in older communication methods to the newer forms enabled by technological progress. These laws prohibit various acts of wiretapping and recording communications, and most of them provide a cause of action to anyone whose communication is intercepted without their consent.

Those elected policymakers did not invent a brand-new kind of right, nor did they impermissibly expand the jurisdiction of federal courts by authorizing lawsuits from individuals who suffered no conceivable harm. The legislatures merely reinforced preexisting privacy interests by ensuring those rights would remain protected in the new contexts made possible by changing forms of communication. The privacy harm suffered by a victim of electronic wiretapping is of the exact same character as the privacy harm suffered by a victim of physical eavesdropping or unauthorized interception of written letters.

1

And statutes are not only source of legal protection afforded to the privacy interest in electronic communications. As the 20th century progressed and these new forms of communication became more prevalent in American life, courts adapted their applications of constitutional and common law concepts to recognize a zone of privacy around individuals' lives that is not strictly tethered to the concepts of property ownership and trespass, which in previous eras had been the predominant lenses through which privacy rights were viewed.

Accordingly, when Plaintiffs-Appellants ("Website Users") claimed that their electronic communications with Defendants-Appellees BPS Direct, LLC and Cabela's, LLC ("Bass Pro") were wiretapped without their knowledge or consent by unrelated third parties (with Bass Pro's collaboration), they alleged the same *kind* of privacy harm that has *always* been a sufficient basis for redress in American courts. Because that satisfies the Supreme Court's test for Article III standing—as stated in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) and *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)—the district court erred in dismissing their claims.

Bass Pro's entire response brief can be distilled into one argument, with two parts that are both incorrect. First, Bass Pro does not believe people have a general right to exclude others from their communications, and for this reason, Bass Pro refuses to acknowledge that Website Users' interactions with Bass Pro's website were themselves *private* and legally protected from intrusion by third parties such as Session Replay Providers.

Second, building on that premise, Bass Pro argues that Website Users' alleged harm is not comparable to the concrete harms recognized in this Court's privacy precedents because, according to Bass Pro—and the district court—people only have a right to privacy in a very limited set of datapoints about themselves, such as personally identifying information, financial information, social security numbers, and medical information. *See* Bass Pro Br. at 11 (arguing that invasion of privacy claims require looking to the "types of *information* that have been protected by the common law privacy torts.") (emphasis added); *id.* at 17 (arguing that anti-wiretapping statutes do "not require a showing of harm" because they do not distinguish the lawfulness of a wiretap based on the content of the communication intercepted). In short, Bass

3

Pro's position is simply that wiretapping causes no privacy injury unless some "sensitive" data is obtained by the wiretapper.

Bass Pro is wrong because the right to privacy in this country is significantly more robust than that, and the law has protected against intrusions into communications—regardless of topic—since the founding. This Court's numerous analogous cases are also uniformly in agreement that surreptitious monitoring of electronic communications causes concrete harm and confers standing in those whose communications are intercepted without their consent.

For these reasons, and as explained in more detail below, this Court should reverse the district court's dismissal of Website Users' claims.

## **ARGUMENT**

### A. **The kind of harm at issue here is the same as in this Court's binding *Google* and *Nickelodeon* decisions.**

Website Users' alleged harm is an intrusion into the privacy of their electronic communications, which they suffered when Session Replay Providers used an interceptive device, Session Replay Code, with the aid of Bass Pro. As explained in Appellants' opening brief, "Session Replay Code" refers to JavaScript code sent from a website's

4

servers to a visitor's browser, where it instructs the browser to transmit instantaneous logs of every type of input the visitor makes on a webpage using a mouse or keyboard. These intercepted transmissions are received by servers owned by the developers of the Code ("Session Replay Providers"), which in this case included Microsoft Corporation, Quantum Metric, and Mouseflow. *See* Appellant's Opening Br. at 4–6 (citing Appx68–69, Appx82, Appx87, Appx96, Appx111–12).

Website Users brought claims against Bass Pro for its unlawful procurement and use of wiretapped communications under federal and state anti-wiretapping statutes, and they asserted common law claims for invasion of privacy in Maryland, Massachusetts, Missouri, and Pennsylvania.[1]

Website Users' standing turns on whether this alleged invasion of privacy in their electronic communications with Bass Pro "has a close

---

[1] The specific statutes at issue are: the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*; the Maryland Wiretapping and Electronic Surveillance Act, Md. Code. Ann., Cts. & Jud. Proc. § 10-401; the Massachusetts Wiretapping Statute, Mass. Gen. Laws ch. 272 § 99(Q); the Missouri Wiretap Act, Mo. Ann. Stat. § 542.400, *et seq.*; and the Pennsylvania Wiretap and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq. See* Appx120–179.

relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

The answer to that question is "yes," because there is a long history and tradition in American courts of recognizing individuals' right to communicate privately. Although the ways we communicate have changed over time, the basic interest each person has in deciding for themselves who to share their thoughts with has been legally protected throughout the nation's history.

For this reason, this Court has already held in analogous cases that internet users have standing in federal court to sue for invasions of their privacy when their internet browsing is monitored and tracked without their consent. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016); *In re Google Inc. Cookie Placement Cons. Priv. Litig.*, 934 F.3d 316 (3d Cir. 2019) ("*Google II*"). Those decisions hold that invasions of a person's privacy interest in internet browsing are concrete harms under *Spokeo*.

As explained below, Bass Pro, like the district court, fails to identify a substantive distinction between *type* of harm at issue in this

6

case and those precedents, which is the controlling factor in an Article III standing analysis. This Court should therefore reverse the district court for its failure to follow these binding precedents and its failure to appropriately apply the test of *Spokeo* and *TransUnion*.

There is no difference whatsoever between the *kind* of harm Website Users alleged and the kind of harm this Court held to be a concrete injury-in-fact in *Google II* and *Nickelodeon*. Those two cases involved alleged invasions of individuals' privacy interests in their personal website browsing habits, which is the same kind of harm plaintiffs alleged when they claimed that their browsing activity and communicative inputs on Bass Pro and Cabela's websites were intercepted by Session Replay Providers without permission: "History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization." *Google II*, 934 F.3d at 325; *see also Nickelodeon*, 827 F.3d at 274 ("each plaintiff complains about the disclosure of information relating to his or her online behavior.").

Bass Pro incorrectly labels that statement from *Google II* as "dicta." Bass Pro Br. at 20 n.5. Bass Pro is dead wrong. This Court was required to assess its jurisdiction because standing is a "threshold issue in every case." *Hassan v. City of New York*, 804 F.3d 277, 289 (3d Cir. 2015). When it turned to the standing issue, it resolved it by following *Nickelodeon*, which had "allegations of standing [that] are indistinguishable," and its conclusion that unauthorized tracking of a person's browsing behavior is a concrete harm is the *holding* of the Court on that legal issue. *See Google II*, 934 F.3d at 325.

Bass Pro argues that *Google* and *Nickelodeon* are distinguishable because the data collected in those cases was somehow more private or personal than the communications Website Users allege were intercepted here, but that is simply untrue. The privacy harms at issue in *Google* and *Nickelodeon* were from the defendants' surreptitious tracking of the plaintiffs' web browsing history, which was accomplished using "cookies" placed on the users' browsers. Website Users' allegations go further here because Session Replay Code is a more powerful and immediate interceptive device than passive tracking cookies.

8

In the *Google* cases, the plaintiffs alleged that the cookies allowed the defendants to "compile the [i]nternet histories of users" and could capture search terms a user had *previously* entered by collecting "queried URLs," *i.e.*, URL addresses that reflect the search terms previously entered by a user. *See In re Google Inc. Cookie Placement Cons. Priv. Litig.*, 806 F.3d 125, 131, 138 (3d Cir. 2015) ("*Google I*"). This technology did not involve real-time interceptions of the mouse movements or keyboard text entries of the user, like Website Users alleged here. *Id.* at 141–42 (noting that the "ordinary function" of the tracking cookies at issue *did not* involve "capturing communications sent by the plaintiffs and intended for first-party websites, and transmitting them to the defendants").

The information types and communications intercepted here are much more comprehensive and personal than the data at issue in *Google* because they include the Website Users' actual real-time inputs while visiting a website, *in addition to* the URL collection featured in *Google*. Website Users alleged that the Session Replay Code collects URLs as just one of many data points: their searches, names, addresses, payment card numbers, and numerous other substantive

9

communications were also directly intercepted, including every single mouse movement and keystroke. Appx68–69 ¶ 1; Appx99 ¶ 99; Appx100 ¶ 104; Appx171 ¶ 425. *Google* simply did not involve the interception of any contents of the users' communications besides "queried URLs." *Google I*, 806 F.3d at 135–37.

The tracking technology at issue in *Nickelodeon* was substantively the same as in *Google*. *See Nickelodeon*, 827 F.3d at 268–69. Bass Pro overstates the facts of *Nickelodeon* when it suggests that *Nickelodeon* involved categorically more "personal" or "private" information about the plaintiffs than this case. The defendants in *Nickelodeon* did *not* intercept or disclose children's identities in the way Session Replay Code intercepted Website Users' text entries, which included their names, addresses, and payment card information.

The *Nickelodeon* court addressed the issue of whether the collected URL and static device data was sufficiently "personally identifying" to trigger liability under the Video Privacy Protection Act. *See* 827 F.3d at 281–90. The plaintiffs in *Nickelodeon* alleged that these static identifiers, such as IP addresses and device information, could be

used by Google to deanonymize children due to Google's access to other sources of abundant information about people. *See id.* at 289.

Ultimately this Court determined that the static identifiers Viacom shared with Google were not personally identifying for purposes of the statute, leading the Court to hold that "the allegation that Google will assemble otherwise anonymous pieces of data to unmask the identity of individual children is, at least with respect to the kind of identifiers at issue here, simply too hypothetical to support liability under the [VPPA]." *Id.* at 290.

Although the data collected in *Nickelodeon* was not personally identifying enough to state a claim under the VPPA, that did not stop the Court from holding that the plaintiffs had Article III standing because they alleged an invasion of privacy in their internet browsing. *Nickelodeon*, 827 F.3d at 272–74. The Ninth Circuit took a nearly identical approach towards a VPPA claim by correctly holding that the plaintiff had standing because the VPPA protects a substantive privacy interest, even though the plaintiff failed to plausibly allege that his personally identifying information had been disclosed. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983–86 (9th Cir. 2017).

11

This Court's decisions in *Google II* and *Nickelodeon* have ample support in common law. The cases Website Users provided on this point (Op. Br. at 42–44) are not "confusing" or a "random assortment," as Bass Pro argues. Bass Pro Br. 22. They all illustrate that the common law has long protected a zone of privacy and deemed any invasions of that zone to be harmful and actionable, regardless of whether the intruder obtained any sensitive information through the intrusion.

The act of invading a person's privacy by prying into the person's communication is itself harmful, and it does not matter what information the eavesdropper or interceptor acquires through the invasion. And neither the common law, this Court's precedents, nor the statutes at issue in this case limit the concrete right to privacy to "personally identifying information." *See Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 34–35 (2d Cir. 2017) (citing *Nickelodeon* and *Google I*, and concluding that "[t]he cases themselves, however, do not signal that individual identification is required for standing purposes, nor does the common law tort of intrusion upon seclusion."); *In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1009–10 (N.D. Cal. 2020)

("After all, information need not be personally identifying to be private.").

As explained, Website Users have standing because they alleged an even broader and more invasive intrusion into their internet communications than occurred in *Nickelodeon* or *Google*. Website Users' browsing and shopping on the Bass Pro and Cabela's websites involve the same types of private internet communications, and more, as were at issue in *Nickelodeon* and *Google*. At a minimum, Website Users alleged that they suffered the same "kind of harm" as the plaintiffs in those cases, and that is the dispositive factor under *TransUnion*. *See Barclift v. Keystone Credit Services, LLC*, 93 F.4th 136, 145 (3d Cir. 2024). Intercepting a website visitor's actual communications as they are happening causes an even greater privacy harm than merely disclosing the website visitor's prior URL history. Bass Pro's argument that the right to privacy in electronic communications is not similar to any historically recognized privacy right is, in the words of this Court, "untenable." *Google II*, 934 F.3d at 325.

The Court's decision in *Barclift* does not bolster Bass Pro's position or salvage the district court's decision. *Barclift* correctly

13

rejected the notion that *TransUnion* requires an element-by-element comparison between the plaintiff's alleged harm and a common law tort. *Barclift*, 93 F.4th at 145. Bass Pro's argument to this Court is that Website Users' privacy harms are not comparable to the harms protected against by the tort of intrusion upon seclusion because an element of that tort is that "[t]he intrusion must be of the sort that would cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." Bass Pro Br. at 24 (quotation marks omitted). But Bass Pro's belief that Website Users cannot meet that element of the tort is irrelevant; *Barclift* rejected this approach to Article III standing. 93 F.4th at 145 ("We believe that if the Court wanted us to compare elements, it would have simply said so.").

Although the majority in *Barclift* rejected that plaintiff's standing, the case involved a different type of statutory violation and a fact pattern that is not at all analogous to an electronic wiretap. For that reason, this Court did not compare the plaintiff's alleged harm to the type of privacy invasion caused by the secret interception of a communication. *See id.* at 145–46 (only looking to the recognized common law harm of unreasonable publicity given to a private matter).

14

But as explained above, Website Users' alleged privacy harm *is* factually analogous to the harms at issue in *Google* and *Nickelodeon*, and *Barclift* does not overrule, or conflict with, those precedents. For these reasons, the district court erred in failing to follow the holdings of *Google* and *Nickelodeon*, which are closer factually than *Barclift*. This Court should reverse and hold that Website Users alleged a concrete injury in fact when their website communications were intercepted.

**B.    Website Users Cornell and Montecalvo would satisfy a more stringent requirement for Article III standing, so even under the district court's flawed reasoning they should not have been dismissed.**

Even if this Court departs from its approaches in *Google* and *Nickelodeon*—and splits from the Ninth Circuit—by affirming the district court's limitation of Website Users' privacy rights to "financial data from banks or credit cards," Appx20, Plaintiffs Cornell and Montecalvo would meet that new standard. These two Website Users both alleged that, during their visits to Bass Pro's websites, they made purchases, and entered information entered information needed to effectuate a purchase including their name, address, payment, and

billing information.  *See* Appx100–01 ¶¶ 104–05; Appx103–04 ¶¶ 117–18; Bass Pro Br. at 6.

The district court concluded that despite this, Website Users Cornell and Montecalvo *still* did not meet the standing requirement because the allegations were not specific enough. Appx 24–25. Bass Pro argues that this conclusion was correct both because the items purchased were not "humiliating" and also because "[f]or all we know, these plaintiffs made their purchases with a gift card or a pre-paid card that was not linked to them."  Bass Pro Br. at 31.  This specious argument highlights Website Users' point. Website User Cornell alleged that she made a purchase on Bass Pro's website, and during this transaction, entered "her name, address, and *payment and billing information* into form fields during the checkout process," which her counsel affirmed at oral argument and affirmed that this included credit card data.  Appx100 ¶ 104; Appx103 ¶ 117; Appx195–96 at 13:18–14:3 (also clarifying "that in and of itself is going too far to determine whether or not there is standing.").

Both the district court's order and Bass Pro nitpick these statements to provide alternate hypotheses. On a motion to dismiss, in

which all allegations should be taken and all inferences drawn in plaintiffs' favor, this is plainly inappropriate. *See Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020).

The communication of private information including payment and billing information is plainly sufficient to meet Article III standing and injury purposes under *TransUnion* and controlling Third Circuit precedent. *TransUnion*, 594 U.S. at 425 (identifying disclosures of private information as "[c]hief among" the intangible harms that can be concrete for Article III purposes); *Google II*, 934 F.3d at 325 ("More than precedent supports our conclusion. History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization."); *Nickelodeon*, 827 F.3d at 274 ("The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information.").

But even if this Court is inclined to draw negative inferences about the well-pleaded allegations of the complaint, electronic communications are presumptively private, and it is irrelevant what information was transcribed or communicated by Bass Pro about Website Users to third parties. In contesting the contours of Website Users' purchases, Bass Pro concedes that Montecalvo and Cornell—the same as all other named plaintiffs and the class—communicated information through their use of the website that was presumptively private, and would ordinarily only have been communicated between the Website user and Bass Pro.

But instead these communications were surreptitiously intercepted by third parties, and used for the profit of those third parties, in violation of numerous statutes and the long-recognized right to privacy. Even if these facts would not have been sufficient to state a common law claim, federal and state legislatures made the policy decision to extend the same broad protection to electronic communications that the common law provides to older forms of conversing. The whole purpose of elevating a common law tort to statutory protection is to provide a basis for a lawsuit in American courts *even though* it may not have been

cognizable at common law. *See Susinno v. Work Out World Inc.,* 862 F.3d 346, 352 (3d Cir. 2017) ("Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries.") (quoting *Spokeo,* 578 U.S. at 341).

There is no question that the anti-wiretapping statutes at issue in this case meet the *Spokeo* test of protecting against a harm—the right to privacy—that has been historically and traditionally recognized. As a result, this Court should reverse the district court's order and find that Website Users have adequately alleged an injury sufficient to confer Article III standing.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs-Appellants request that this Court reverse the district court's order of December 5, 2023, which granted Defendants-Appellees Bass Pro and Cabela's motion to dismiss for lack of subject matter jurisdiction.

Dated: April 9, 2025                    Respectfully submitted,

                                        */s/Jamisen A. Etzel*
                                        Gary F. Lynch

Jamisen A. Etzel
Nicholas A. Colella
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
gary@lcllp.com
jamisen@lcllp.com
nickc@lcllp.com

Kate M. Baxter-Kauf
Karen Hanson Riebel
**LOCKRIDGE GRINDAL
NAUEN P.L.L.P.**
100 Washington Avenue South,
Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
kmbaxter-kauf@locklaw.com
khriebel@locklaw.com

Steven M. Nathan
**HAUSFELD LLP**
33 Whitehall Street
Fourteenth Floor
New York, NY 10004
Tel: (646) 357-1100
snathan@hausfeld.com

MaryBeth V. Gibson
**GIBSON CONSUMER LAW
GROUP, LLC**
4729 Roswell Road,
Suite 208-108
Atlanta, GA 30342
marybeth@gibsonconsumer
lawgroup.com
*Attorneys for Plaintiffs / Appellants*

## **CERTIFICATIONS**

I, Jamisen A. Etzel, hereby certify as follows:

1.    Pursuant to Rule 46.1 of the Local Appellate Rules for the United States Court of Appeals for the Third Circuit, I, certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.    I certify that this Reply Brief of Appellants complies with the type and volume limitations:

a. According to the word count in the word processing system employed in drafting this brief (Microsoft Word), the Reply Brief of Appellants contains 3,598 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

b. This Brief has been written in Century Schoolbook, a proportionally-spaced, 14-point serif font.

3.    On today's date, April 9, 2025, I filed this brief with the Clerk of the United States Court of Appeals for the Third Circuit via the Court's CM/ECF system, which will cause service on counsel for all parties of record, who are registered CM/ECF Users.

4.     I further certify that the E-Brief was scanned for computer viruses using the current version of VirusTotal scanning service, and no virus was detected.

5.     I certify that the electronically filed version of the brief and the paper copies sent to the Court are identical.

*/s/ Jamisen A. Etzel*
Jamisen A. Etzel
*Counsel for Appellant*
