**No. 23-3235**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

BRIAN CALVERT, ET AL.,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMIARLY SITUATED,

*Appellants,*

*v.*

BPS DIRECT LLC, ET AL.,

*Appellees.*

Appeal from the United States District Court, Eastern District of
Pennsylvania, Case No. 2:23-md-03074
The Honorable Mark Kearney

## APPELLEES' SUPPLEMENTAL BRIEF

Michael Rayfield
SHOOK, HARDY & BACON LLP
1 Rockefeller Plaza
Suite 2801
New York, NY 10020
(212) 779-6110
mrayfield@shb.com

Jennifer McLoone
SHOOK, HARDY & BACON LLP
201 South Biscayne Blvd.
Suite 3200
Miami, Fl 33131
(305) 358-5171
jmcloone@shb.com

Maveric Ray Searle
SHOOK, HARDY & BACON LLP
111 S. Wacker Drive
Suite 4700
Chicago, IL 60606
(312) 704-7700
msearle@shb.com

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 2

I.　*GameStop* Forecloses Plaintiffs' Main Arguments. ........................ 2

II.　All Of The Plaintiffs Lack Standing. ............................................... 4

CONCLUSION ..................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Cook v. GameStop*,
   689 F. Supp. 3d 58 (W.D. Pa. 2023),
   *aff'd*, 2025 WL 2250261 ................................................................................ 8

*Cook v. GameStop, Inc.*,
   __ F.4th __, 2025 WL 2250261 (3d Cir. Aug. 7, 2025) ...... 1, 2, 3, 4, 5, 7

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   934 F.3d 316 (3d Cir. 2019) ............................................................................ 3

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016) ............................................................................ 3

*Jones v. Bloomingdales.com*,
   124 F.4th 535 (8th Cir. 2024) ......................................................................... 8

*TransUnion, LLC v. Ramirez*,
   594 U.S. 413 (2021) ........................................................................................ 2

## INTRODUCTION

This Court recently decided *Cook v. GameStop, Inc.*, __ F.4th __, 2025 WL 2250261 (3d Cir. Aug. 7, 2025), which affirmed the dismissal of a session replay case for lack of Article III standing. If the Court had any doubts about affirming here, *GameStop* should put them to rest. The two cases are substantively identical; and in fact, plaintiffs identified *GameStop* as a "related case" in their opening brief.

In *GameStop*, the Court held that session replay software does not cause harm that bears a "close relationship to a harm traditionally recognized" at common law, disagreeing with the plaintiff that her claims were similar to the torts of (i) "disclosure of private information" and (ii) "intrusion upon seclusion." *Id.* at *3-5. In reaching that conclusion, the Court rejected nearly all of the arguments raised by Plaintiffs here—which is not surprising, because some of their lawyers also represented the *GameStop* plaintiff. In short, it is now even clearer than before that Plaintiffs lack Article III standing.[1]

---

[1] Citations to "OB__" refer to plaintiffs' opening brief. "AB__" is BPS's brief. "JA__" refers to the Joint Appendix. "Dkt. __" refers to entries on the district court's docket that are not in the JA.

## ARGUMENT

I. *GameStop* Forecloses Plaintiffs' Main Arguments.

Both in the district court and on appeal, Plaintiffs' main position has been that *any* alleged violation of a wiretapping statute confers standing, regardless of the content of the communication at issue. *See, e.g.*, OB14 ("[T]he wiretapping statutes properly elevate all interceptions of electronic communications into cognizable injuries, and satisfy Article III standing requirements, regardless of the content of the communication."); OB18-19, 45-47. This Court disagreed with the same argument in *GameStop*, explaining that the plaintiff's theory "misconstrues the meaning of 'elevation' in *TransUnion*"; a legislature "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." 2025 WL 2250261, at *5 (quoting *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 426 (2021)). Instead, a legislature may only "elevate harms that exist in the real world"—that is, harms comparable to "previously existing legally cognizable injuries." *Id.* at *3, *5. This reasoning tracks the position BPS took in its brief. AB16-17.

Plaintiffs also placed great weight on earlier decisions of this Court finding standing in internet privacy cases. OB21-23, 27-30, 49-52

(discussing *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016), and *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019) ("*Google II*")). The *GameStop* plaintiff made the same arguments. *See* 2025 WL 2250261, at *6. This Court held that both *Nickelodeon* and *Google II* were "distinguishable . . . because the 'plaintiffs alleged that a third party . . . tracked their personal internet browsing information in violation of the third party's own express promises not to do so.'" *Id.* (quoting *Google II*, 934 F.3d at 325); *see also id.* (explaining that the *Nickelodeon* defendant "promised not to collect information"). Again, this reasoning is consistent with BPS's brief.

Apart from misreading the case law, Plaintiffs argued repeatedly that "the district court conflated standing with the merits" by considering "the nature of the information" disclosed through the session replay software. OB13, 39-41. This Court disposed of that argument in *GameStop*, explaining that its "conclusion is not a premature merits determination, but an assessment of the plausibility of [the] alleged injury as it pertains to standing." 2025 WL 225061, at *5. Here, too, the Court must look at the specific data that BPS allegedly collected from Plaintiffs, and compare it to the types of information that have been

3

protected by the common law privacy torts. Under that test, all of the plaintiffs lack standing—as discussed next.

## II. All Of The Plaintiffs Lack Standing.

The plaintiff in *GameStop*, Amber Cook, alleged that "during a visit to GameStop's website, she browsed for different products for sale, communicated with GameStop's website by using her mouse to hover and click on certain products and typing search words into the search bar, and selected a product to add to her shopping cart by clicking 'add to cart.'" 2025 WL 2250261, at *4 (quotation marks and alterations omitted). The Court found these claims insufficient. *Id.* at *5. It first held that Cook's alleged harm was not analogous to the tort of "disclosure of private information," both because "the information captured by the session replay code was not sensitive or personal," and because "the information was never publicized." *Id.* at *4. The Court then held that the alleged harm was not comparable to "intrusion upon seclusion"— Cook did not "plausibly allege that she was secluded, in solitude, or that her website activity involved her private affairs." *Id.* at *5.

The exact same analysis applies here. Six of the eight plaintiffs engaged in *fewer* activities on BPS's websites than Cook did.

4

- Plaintiff Timothy Durham did not allege any individual interaction with BPS's website. JA98-107.

- Greg Moore, Arlie Tucker, and Brittany Vonbergen alleged that they visited BPS's website but said nothing about what they did during the visit. JA104-06.

- Brian Calvert alleged that he "browsed for different products for sale and communicated with Cabela's website by using his mouse to hover and click on certain products and typing search words into the search bar." JA98.

- Marilyn Hernandez alleged that she "browsed for jackets for sale and communicated with BPS's website by using her mouse to hover and click on certain products and typing search words into the search bar." JA101.

These plaintiffs—who did not even start the process of buying a product—cannot possibly distinguish their claims from Cook's. Like Cook, they have not alleged that they sent BPS any remotely sensitive or personal information, nor do they claim that BPS sent data to anyone other than its session replay vendors. JA68-69; *see Gamestop*, 2025 WL

5

2250261, at *4 ("Cook's allegations concern disclosure of information to Microsoft, a third-party vendor to GameStop, not the broader public.").

There are two plaintiffs who allegedly went a step further than Cook, but not nearly far enough to make the outcome different. Heather Cornell and Peter Montecalvo claimed that they bought items on BPS's websites: respectively, an "Eclipse Mesh-Back Canopy Chair in Cloisonne Blue" (JA100), and a "RedHead Last Chance Light Duty Belt" (JA103). They alleged that when they made these purchases, they entered their "name, address, and payment and billing information." JA100, 103. Critically, though, when the district court dismissed this suit, it gave Cornell and Montecalvo a chance to replead if they could "truthfully allege" that they shared "sensitive personal information" like a "medical diagnosis" "or financial data from banks or credit cards." JA34. Both declined, choosing to "stand on the allegations" in the operative complaint. Dkt. 96. So Plaintiffs have made no allegations that would allow the Court, for example, to know whether these plaintiffs entered credit card information or instead paid with something unlinked to their identities, like a gift card or a pre-paid card.

6

In any event, Cornell and Montecalvo did not allege harms that are comparable to the disclosure and intrusion torts. Start with disclosure. As this Court recognized in *GameStop*, the harm associated with that tort is "the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny." 2025 WL 2250261, at *3. Even if Cornell and Montecalvo shared information that could connect their purchases to their identities, there is nothing "humiliating" about buying a blue chair and a red belt. JA100, 103. And regardless, neither plaintiff's data was "publicized or even publicly disclosed"—an independently dispositive fact under *GameStop*. 2025 WL 2250261, at *4 ("[E]ven assuming the information was the type that could cause Cook humiliation . . . , the information was never publicized.").

"Intrusion upon seclusion is an intentional intrusion, physical or otherwise, upon the solitude or seclusion of another or his *private affairs or concerns* if the intrusion would be *highly offensive* to a reasonable person." *Id.* (quotation marks and alterations omitted). This tort is not comparable for two reasons. First, none of the plaintiffs—including Cornell and Montecalvo—alleged that BPS collected information about their "private affairs or concerns." Even if Cornell and Montecalvo had

7

been willing to allege that they entered credit card information into BPS's websites (and they were not), they would also need to be able to plausibly allege that such credit card information was transmitted by session replay and made available to a session replay vendor. Even then, this allegation would not give rise to an intrusion tort as it does not create a risk of "mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Cook v. GameStop*, 689 F. Supp. 3d 58, 72 (W.D. Pa. 2023) (quotation marks omitted), *aff'd*, 2025 WL 2250261; *see also Jones v. Bloomingdales.com*, 124 F.4th 535, 539 (8th Cir. 2024) (dismissing session replay case because intrusion tort was not similar).

Second, plaintiffs have not alleged that BPS used their data in a "highly offensive" manner. To the contrary, their complaint recognizes that session replay has "*legitimate* purposes." JA87 (emphasis added). BPS used the software to improve the functionality of its websites and the effectiveness of its advertising campaigns—activities that are ubiquitous on the Internet. JA84, 87. As courts around the country have held, there is nothing "offensive" about session replay code. AB27-30.

## CONCLUSION

This Court should affirm the decision below.

8

Dated: August 18, 2025  Respectfully submitted,

*/s/ Michael Rayfield*

Michael Rayfield
SHOOK, HARDY & BACON LLP
1 Rockefeller Plaza, Ste. 2801
New York, NY 10020
(212) 989-8844
mrayfield@shb.com

Jennifer McLoone
SHOOK, HARDY & BACON LLP
201 South Biscayne Blvd., Ste. 3200
Miami, Fl 33131
(305) 358-5171
jmcloone@shb.com

Maveric Ray Searle
SHOOK, HARDY & BACON LLP
111 S. Wacker Drive, Ste. 4700
Chicago, IL 60606
(312) 704-7700
msearle@shb.com

*Counsel for Appellees*

## CERTIFICATIONS

I, Michael Rayfield, certify as follows:

1.　Pursuant to Rule 46.1 of this Court's Local Appellate Rules, I certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.　Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(c), I certify that this brief complies with the type and volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(b) because, excluding the parts of the brief exempted by Rule 32(f), this brief contains 1,561 words and is written in Century Schoolbook, a proportionally-spaced 14-point serif font.

3.　Today, August 18, 2025, I filed this brief with the Clerk of this Court via the Court's CM/ECF system, which will cause service on counsel for all parties of record who are registered CM/ECF users.

4. I further certify that the E-Brief was scanned for computer viruses using Crowdstrike Falcon Sensor v. 7.21.19205.0, and no virus was detected.

5. I certify that the electronically filed version of the brief and the paper copies sent to the Court are identical.

/s/ Michael Rayfield

Michael Rayfield
SHOOK, HARDY & BACON LLP
1 Rockefeller Plaza, Ste. 2801
New York, NY 10020
(212) 989-8844
mrayfield@shb.com

*Counsel for Appellees*

Dated: August 18, 2025