**CASE NO. 23-3235**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

BRIAN CALVERT, et al,
individually and on behalf of all others similarly situated,
*Plaintiffs / Appellants*

v.

BPS DIRECT LLC, et al,
*Defendants / Appellees.*

---

*On Appeal from an Order Entered in the United States District Court for the Eastern District of Pennsylvania in Case No. 2:23-md-03074*
*The Honorable J. Mark Kearney, U.S. District Judge*

---

# APPELLANTS' SUPPLEMENTAL BRIEF

---

**LYNCH CARPENTER, LLP**
Gary F. Lynch
Jamisen A. Etzel
Nicholas A. Colella
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
412-322-9243

*Counsel for Appellants*

*(Additional counsel listed on signature page)*

# TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 2

A. *GameStop* was wrongly decided because it conflicts with this Court's Article III precedents. .......... 2

B. Appellants Cornell and Montecalvo have standing even under the error-ridden holding of *GameStop*. .......... 8

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Barclift v. Keystone Credit Servs., LLC*,
93 F.4th 136 (3d Cir. 2024) ........................................................ 7, 10

*Bartnicki v. Vopper*,
200 F.3d 109 (3d Cir. 1999) ........................................................ 7

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ........................................................ 6

*Cook v. GameStop, Inc.*,
--- F.4th ---, 2025 WL 2250261 (3d Cir. Aug. 7, 2025) ................. Passim

*In re Google Inc. Cookie Placement Cons. Priv. Litig.*,
934 F.3d 316 (3d Cir. 2019) ........................................................ 1, 2, 9

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........................................................ Passim

*Sosa v. Martin County*,
57 F.4th 1297 (11th Cir. 2023) ........................................................ 4

## **INTRODUCTION**

Plaintiffs-Appellants ("Website Users") were electronically wiretapped in violation of their states' laws, and they have Article III standing to bring their claims against Defendants-Appellees BPS Direct, LLC and Cabela's, LLC ("Bass Pro"). The Court's recent decision in *Cook v. GameStop, Inc.*, --- F.4th ---, 2025 WL 2250261 (3d Cir. Aug. 7, 2025) does not change anything.

First, *GameStop* failed to follow this Court's controlling precedents in *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016), and *In re Google Inc. Cookie Placement Cons. Priv. Litig.*, 934 F.3d 316 (3d Cir. 2019), which involved indistinguishable privacy harms. The *GameStop* court attempted to distinguish these cases based on the fact that the defendants in *Nickelodeon* and *Google* allegedly promised not to collect browsing information, but that distinction has nothing to do with the kind of privacy harm suffered by the website users in those cases, *GameStop*, or this case. The Article III harm for plaintiffs in all of these cases is exactly the same—an intrusion into their private internet browsing activity. This Court's previous decisions make clear that it is the *intrusion* itself that is the Article III injury,

regardless of the content seen by the intruder. This is the core error of the *GameStop* decision, which held incorrectly that intrusive electronic wiretapping was not an Article III injury because the intercepted communications were not sufficiently "private" in the Court's eyes.

Second, even if *GameStop* is not overturned *en banc* as it should be, at least two of the Website Users still have standing because they alleged the illegal interception of their personally identifying information and payment card numbers.

## ARGUMENT

### A. *GameStop* was wrongly decided because it conflicts with this Court's Article III precedents.

As explained in Appellants' previous briefs, this Court had already held in analogous cases that internet users have standing in federal court to sue for invasions of their privacy when their internet browsing is monitored and tracked without their consent. *See Nickelodeon*, 827 F.3d at 274 ("The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps "intangible," the harm is also concrete in the sense that it involves a clear de facto injury, i.e., the unlawful disclosure of legally protected information."); *Google*, 934 F.3d

at 325 ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization."). Those decisions hold that invasions of a person's privacy interest in internet browsing are concrete harms sufficient to confer standing. The *GameStop* panel did not follow these precedents. Instead, it attempted to distinguish *Nickelodeon* and *Google* from the case before it by pointing to allegations in those cases that the defendants had breached promises not to engage in the type of tracking at issue. *See GameStop*, 2025 WL 2250261, at *6.

This distinction is not valid because the Article III injury recognized by this Court in *Nickelodeon* and *Google* was exactly the same as the injury suffered by the plaintiff in *GameStop* and the Appellants here—an invasion of their right to privacy in their electronic communications. The fact that one of the two defendants in *Nickelodeon* allegedly promised website users that it was not collecting "personal information" has nothing to do with the resulting privacy injury. The plaintiffs were not bringing breach of contract claims, and a person's

right to privacy in their electronic communications does not depend on anyone's promise not to wiretap them.

The *Nickelodeon* court did not say that Viacom's promise not to collect browsing data was relevant to the Article III injury. In the standing section of the opinion, the court makes no mention of the promise. *Nickelodeon*, 827 F.3d at 272–74. Because the promise was not material to *Nickelodeon* court's holding on Article III, it is not a valid basis for factually distinguishing the cases. *See Sosa v. Martin County*, 57 F.4th 1297, 1301 (11th Cir. 2023) ("If we treated every factual distinction with a precedential decision as necessarily material, the doctrine of precedent would lose most of its function....Judges would be freed from the requirement that they apply the law, so long as they could unearth any factual discrepancy between binding caselaw and the case they wanted to decide a different way.") (citations omitted).

Further, Google, Inc. was also a defendant in *Nickelodeon*, but it made no privacy-related promises to the plaintiffs on Nick.com, nor could it, as Google does not own Nick.com. *Nickelodeon*, 827 F.3d at 267–70 (reciting facts that do not refer to any promises made by Google to the plaintiffs). Yet despite the absence of any promise by Google not

to collect browsing behavior from Nick.com, this Court held that the plaintiffs had standing to bring a host of privacy claims (similar to the claims at issue here) against Viacom *and* Google, and proceeded to analyze the merits of whether plaintiffs sufficiently stated those claims. *See generally id.* at 274–95.

The alleged promise is not what conferred standing on the plaintiffs; otherwise, the plaintiffs would not have had standing to sue Google as a defendant. Rather, a person's allegation that their internet browsing behavior was spied on by a third party without their consent suffices as a concrete harm for Article III purposes. Neither the type of information communicated nor the presence or absence of any promises by the eavesdroppers has anything to do with it. It is the act of spying itself, not what the spy sees or a breach of a promise not to spy, that constitutes the actionable privacy injury. The *GameStop* panel botched the Article III inquiry by improperly distinguishing *Nickelodeon* and *Google* on irrelevant grounds.

The type of communications intercepted in *Google* and *Nickelodeon* were less private and revealing than the communications intercepted in this case, so those precedents cannot be distinguished on

that basis either. For example, although the data collected in *Nickelodeon* was not "personally identifying" under the VPPA, the plaintiffs still had Article III standing because they alleged an invasion of privacy in their internet browsing. *Nickelodeon*, 827 F.3d at 272–74. That was all the plaintiffs needed to allege for standing, not that the intercepted communications were personally identifying or particularly sensitive. The act of invading a person's privacy by prying into the person's communication is itself harmful, and it does not matter what information the eavesdropper or interceptor acquires through the invasion. As addressed by the Supreme Court, "[a wiretapping statute] is in fact a content-neutral law of general applicability…the basic purpose of the statute at issue is to 'protect the privacy of wire[, electronic,] and oral communications'… The statute does not distinguish based on the content of the intercepted conversations, nor is it justified by reference to the content of those conversations. Rather, the communications at issue are singled out by virtue of the fact that they were illegally intercepted—by virtue of the source, rather than the subject matter." *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001). Regardless of the content captured, "the surreptitious interception of

private communications in the first instance—[is]a highly offensive physical intrusion on the victim's private affairs." *Bartnicki v. Vopper*, 200 F.3d 109, 122 (3d Cir. 1999).

Like the letters we write, the phone calls we make, the books we read, and the videos we watch, a person's internet browsing on their computer is their private business, not anyone else's. It is against the law for the government, the media, or anyone else to use secret methods to pry into these spheres of private life without consent. The *Google* and *Nickelodeon* courts recognized this, but the *GameStop* court held that eavesdropping is not harmful unless the subject of the conversation is something "sensitive." In doing so, it improperly assessed the "degree" of harm suffered, rather than the "kind" of harm, as squarely rejected in *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145 (3d Cir. 2024).

Like other forms of intrusion upon seclusion, such as opening a person's mail, tapping a phone, spying through someone's windows while hiding in the bushes, the privacy harm occurs regardless of what the intruder reads, hears, or sees while encroaching on the private sphere. The purpose of the societal rule against this behavior is to prohibit and prevent the snooping in the first place. To be sure, when

someone is illegally spying on you, it doesn't matter if your bathrobe is on or off; your privacy is invaded either way.

The *GameStop* decision fails to respect these privacy boundaries. Under *GameStop*, these invasions are not actionable in federal court—regardless of the violation of common law or statutory rights—unless the victim can allege that something sufficiently "sensitive" was obtained by the spy. That must be wrong, and the *GameStop* decision needs to be overturned.

### B. Appellants Cornell and Montecalvo have standing even under the error-ridden holding of *GameStop*.

Even if this Court does not overturn the *GameStop* decision *en banc*, Appellants Cornell and Montecalvo have standing because they alleged an interception of their private and sensitive information. The *GameStop* decision rested on the panel's conclusion that "none of the information Cook entered on GameStop's website was personal or sensitive." *GameStop*, 2025 WL 2250261, at *5. As explained above, the panel's characterization of electronic communications between a consumer and a website operator as inherently non-private for Article III purposes was an error of law that cannot be reconciled with this

Court's prior precedents which held the opposite. *Google*, 934 F.3d at 325; *see also Nickelodeon*, 827 F.3d at 274.

Nevertheless, if *GameStop* remains binding, Appellants Cornell and Montecalvo both communicated personal and sensitive information including their name, address, payment, and billing information. *See* Appx100–01 ¶¶ 104–05; Appx103–04 ¶¶ 117–18; Bass Pro Br. at 6.

The fact that Cornell and Montecalvo have standing under *GameStop,* but the other plaintiffs might not, brings the error of the *GameStop* court into focus. The same thing happened to all of the plaintiffs, and their form of privacy injury is identical in kind; the illegal interception of their private communications. The only difference is that Cornell and Montecalvo made a purchase on Bass Pro's websites and thereby communicated their names and credit card numbers.

Under the flawed analysis in *GameStop*, the other plaintiffs have no Article III harm because, even though they were wiretapped like the others, they cannot allege that the wiretappers obtained their credit card numbers. That fails to recognize the scope of Americans' privacy rights, which are significantly broader than mere protection against disclosure of financial information or medical information. It is the

unauthorized looking and listening itself—not what is seen or heard—that violates the statute and causes the injury.

All the plaintiffs here are complaining about the same conduct and the same invasion of their privacy; the variations in the specific information obtained through the wiretap are only differences of degree of harm, not the type or kind. And under *TransUnion* and this Court's holding in *Barclift*, it is the "kind" of harm that controls. *Barclift*, 93 F.4th at 145. When the *GameStop* court held that federal courts do not have jurisdiction over wiretapping claims unless something "sensitive" is obtained by the eavesdropper, it made the "degree" of harm the dispositive factor, rather than the kind of harm. In doing so, it violated the precedents set in *Nickelodeon*, *Google*, and *Barclift*.

## **CONCLUSION**

For the reasons set forth above and in prior briefs, Plaintiffs-Appellants request that this Court reverse the district court's order of December 5, 2023, which granted Defendants-Appellees Bass Pro's and Cabela's motion to dismiss for lack of subject matter jurisdiction.

Dated: August 18, 2025

Respectfully submitted,

*/s/Jamisen A. Etzel*
Gary F. Lynch
Jamisen A. Etzel
Nicholas A. Colella
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
gary@lcllp.com
jamisen@lcllp.com
nickc@lcllp.com

Kate M. Baxter-Kauf
Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
kmbaxter-kauf@locklaw.com
khriebel@locklaw.com

Steven M. Nathan
**HAUSFELD LLP**
33 Whitehall Street
Fourteenth Floor
New York, NY 10004
Tel: (646) 357-1100
snathan@hausfeld.com

MaryBeth V. Gibson
**GIBSON CONSUMER LAW GROUP, LLC**
4729 Roswell Road,
Suite 208-108
Atlanta, GA 30342

marybeth@gibsonconsumer
lawgroup.com

*Attorneys for Plaintiffs / Appellants*

**CERTIFICATIONS**

I, Jamisen A. Etzel, hereby certify as follows:

1. Pursuant to Rule 46.1 of the Local Appellate Rules for the United States Court of Appeals for the Third Circuit, I, certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2. I certify that this Supplemental Brief of Appellants complies with the type and volume limitations set by the Court's order of August 8, 2025, limiting the brief to ten double-spaced pages:

   a. This Brief has been written in Century Schoolbook, a proportionally-spaced, 14-point serif font.

   b. The brief is ten pages long, excluding the cover, tables of contents and authorities, and counsel's signatures and certifications.

3. On today's date, August 18, 2025, I filed this brief with the Clerk of the United States Court of Appeals for the Third Circuit via the Court's CM/ECF system, which will cause service on counsel for all parties of record, who are registered CM/ECF Users.

4. I further certify that the E-Brief was scanned for computer viruses using the current version of VirusTotal scanning service, and no virus was detected.

*/s/ Jamisen A. Etzel*
Jamisen A. Etzel
*Counsel for Appellant*